reasons, I am of opinion, that the judgment of the supreme court ought to be affirmed.

The majority of the court being of the same opinion ; It was, thereupon, ORDERED and ADJUDGED, that the judgment given in the supreme court be affirmed, with double costs, and damages, and that the record be remitted, &c.

Judgment of affirmance.

*S. C.
2. Caines, 357.*

The New-York Insurance company,          } Plaintiffs in Error,

*against*

William I. Robinson,          } Defendant in Error.

The owners of a ship and cargo, agreed with *R.* who was to go as supercargo, on a voyage out, and home, to pay him a gross sum out of the proceeds of the return cargo, or to give him goods out of it to the amount, at his election, and in consideration of which, *R.* and his partner engaged to sell the return cargo free of commissions. On her homeward voyage from *Batavia* to *N. York*, the vessel was compelled by stress of weather, to put

THE defendant in error brought an action against the plaintiffs in error, in the supreme court, on two policies of insurance. The policies were open, and the insurance was declared to be "upon the interest of *William I. Robinson*, being the allowance made with him as supercargo, as per agreement with the owners of the ship Mary."

On the trial of the cause, the jury found a special verdict, which contained the following facts. The plaintiff being part owner of the ship Mary, and her cargo, contracted with the other owners, to go in the ship, on her voyage to the *East-Indies*, as supercargo, on the terms specified in the following agreement. "We, the subscribers, owners of the ship Mary, having engaged *William I. Robinson*, as supercargo, on her intended voyage, from "hence to *Batavia*, and possibly to *Canton*, have agreed, "in consideration of his undertaking and executing "the duties of that trust, to pay to him, £ 10,000, out "of the proceeds of any cargo the ship may bring from *Ba-*

into *St. Kitts*, where the cargo was sold from necessity, by merchants there, on commission ; part of the proceeds were vested in other articles, the produce of the island, and brought to *New-York*, *R.* having effected a policy of insurance, on his commissions, as stipulated in his contract with the owners, on their refusal to pay him, he abandoned as for a total loss, and brought his action against the insurers, to recover the amount ; and it was held, that as the return cargo did not arrive at *New-York*, *R.* lost his commissions, and was, therefore, entitled to recover the amount of the insurers.

ALBANY,
Feb. 1806.

The New-York
Ins. Company
v.
William I. Ro-
binson.

" *tavia*, or to deliver him part of such cargo, to that
" amount, at the current market price, on his arrival
" here, at his option. But if the ship should proceed to
" *Canton*, and the letter of credit with which she will be
" furnished, should be availing, we, in that case, agree
" to pay him $12,500, as above, otherwise, he is to re=
" ceive no more than $10,000, the same as if the voyage
" out had terminated at *Batavia*. Signed by the owners
" of the ship, and by *W. I.* and *Sylvester Robinson*." In
consequence of this contract, *W. I. Robinson*, and *Syl-
vester Robinson*, entered into the following agreement,
with the owners. " We agree, in consideration of the
" sum to be paid *William I. Robinson*, as herein specified,
" to take upon ourselves the trouble and management of
" the sale of the return cargo from *Batavia* or *Canton*, free
" of commission, subject to the directions of a majority
" of the owners of the ship Mary."

The vessel proceeded on her voyage, and arrived safe
at *Batavia*, where, having sold the outward cargo, and
taken on board a return cargo, she set sail from that place,
on her voyage to *New-York*. During her voyage home,
she met with such severe weather, as induced the master,
after a consultation with the crew, to put into *St. Chris-
tophers*, where she arrived in a disabled state. It became
necessary to have the ship surveyed ; and on a joint ap-
plication of the master and supercargo, the court of ad-
miralty in that island, ordered her to be surveyed, and unla-
den ; after which, she was again ordered to be surveyed.
Upon the second survey, the surveyors reported, " that ha-
ving accurately and carefully examined the said ship, and
considered of the repairs necessary, they do certify, and
declare, upon their oaths, that they are unanimously of
opinion, according to the best of their skill and judgment,
that the said ship cannot be repaired, for the full value
of her when repaired, and that she is in such a state and
condition, without particularizing the several damages,

she has received in her hull, as well as rigging, that it would be dangerous and unsafe to reload her cargo, and proceed with her on the voyage, and to repair her would be highly detrimental to the interests of the owners or underwriters on the said ship and cargo."

Upon this report, the master and supercargo applied for leave to sell the cargo, which was sold by merchants, on commissions. By the existing laws of the island, the cargo could not have been shipped from thence in any other vessel. The defendant in error, bought in the vessel, for account of the owners, and in the following spring, invested part of the proceeds of the cargo, in rum and molasses, which being a light buoyant cargo, she was able to bring it to *New-York*, after undergoing some trivial repairs, though she could not have been rendered adequate to bringing on her original cargo, unless at an expense of more than her value.

An abandonment was duly made by the defendants in error, and an action brought thereon to recover, for a total loss. On the argument of the cause, on the special verdict, the court below gave judgment for the plaintiff below, for a total loss ; to reverse which, the present writ of error was brought.

The reasons of that judgment may be seen in 2 *Caines*, 360, and 361, in which Mr. Justice *Tompkins* delivered the unanimous opinion of the court.

*Hoffman*, for the plaintiffs in error. The only inquiry in this case, is, whether the owners of the vessel and cargo, or the plaintiffs in error, are bound to pay the defendant in error ; for it cannot be denied, that he has faithfully performed all the duties of a supercargo. Unless, therefore, he has, by some express agreement, made his reward to depend on the return of a particular cargo to *New-York*, he is fairly entitled to the stipulated compensation from his employers. If the owners are liable, the insurers are not. Are there any words in the agreement, which import a precedent condition which is to be strictly performed ? He is to be paid

*out of any cargo to be brought from Batavia.* It is not said that it must be brought to *New-York.* If the words of the contract do not clearly imply a condition precedent, the court will not give it such a construction. Further, he is to have a part of the cargo here, at his option. This option was created for his benefit, and ought not to be taken to his prejudice, or so as to destroy the rights vested in him, by the other part of the contract.

Where a sum of money is to be paid, or a service to be performed, at a certain time, or at a particular place, these circumstances do not import conditions requiring a strict performance, but are *modal* only.* Having performed all the duties required of a supercargo,† the defendant in error became entitled to his commissions. The proceeds of the cargo sold at *St. Christophers,* were invested in other goods, which arrived at *New-York,* and were sold by the owners. Suppose the cargo, after its arrival at *New-York,* had been destroyed by fire, would the owners be allowed to say, we have been deprived of the *proceeds,* and, therefore, we are not bound to pay the commissions? This case ought to be considered, as if the defendant in error, was now claiming of the owners, the sum agreed to be paid to him, as supercargo ; for if he cannot recover of the owners, he must of the insurers.

*Radcliff,* for the defendant in error. The matter in controversy, lies within a very narrow compass. It depends on the fair construction of the contract. To understand the agreement, it is necessary to take into view, the situation of the parties, at the time it was made. The owners of the Mary and her cargo, finding it necssaery to employ a supercargo, at a great expense, and being unable to insure, beyond the value of the cargo, made their calculations as to the final result of an important and hazardous voyage, and determined, that the payment of the commissions should depend upon its ultimate success. Such stipulations are not uncommon among merchants, where much property is put at risk, on a distant and pre-

ALBANY,
Feb. 1806.

The New-York
Ins. Company
v.
William I. Robinson.

* 1 *Powell, on Contracts,* 267, 268.
† *Beawes Lex Merca.* 48.

ALBANY,
Feb. 1806.

The New-York
Ins. Company
v.
William I. Ro-
binson.

carious adventure.   The written contract sufficiently ma-
nifests this intention, and the supplementary agreement, as
to the sale of the return cargo, without commissions, con-
firms this idea.   The policy of insurance, also, is not
in the usual form, on *commissions*, generally ; but it is
made on the precise and specific contract in question.   It
is an entire compensation, for an entire service.   There
can be no division, or *pro rata* compensation.   The plain-
tiff must have the whole or nothing.   The insurers must
have so understood the contract.   The insurance was not
for the faithful performance of the duties of a supercargo ;
but, that if he did perform those duties in the manner
stipulated, he should be paid the sum agreed upon.   The
insurance is against all the risks and perils of the sea,
which might prevent the safe arrival of the cargo.   There
can be no rational doubt, then, that the arrival of the car-
go at *New-York*, was to precede the payment.   It was a
precedent condition, and strictly to be fulfilled.   The
option given to the defendant in error, could not be ex-
ercised, unless the goods arrived at *New-York*.   This
confirms the construction contended for,   that the pay-
ment was to depend on the arrival of the proceeds here.

The insurance is for an entire premium, *out* and *home*.
But, why insure the homeward voyage, if the defendant
in error was entitled to his compensation, after the per-
formance of his duties at *Batavia*.   This argument is
conclusive, that the voyage home, or the safe arrival of
the cargo here, was the object of the parties.

But, it is said, that time and place, are not of the *essence*,
of the contract, but *modal* only.   The observation of
*Powell*, however, is not to be understood to that extent.
He means no more, than that where there is an antecedent
debt, or where the debt is created by the contract itself,
in which the place is appointed, the place of payment is
mere circumstance.*   But where the debt arises from
services to be performed, at a particular place, there the

ᵃ *Styles,* 416.
*Pinchard* v.
*Fowke.* 1
*Strange,* 612.
*The Dutch E. I.
Co.* v. *Van Moses.*

place is of the essence of the contract. It creates a condition precedent, and is to be strictly performed.

The case of a supposed loss by fire, subsequent to the arrival here, cannot apply. The question depends on general principles, and on the fair construction of the agreement made between the parties.

*Harison*, in reply. This cause is to be considered, as if it were an action brought by the defendant in error, against the owners. The contract ought to have a fair and liberal construction, so as to be carried into effect according to the intent of the parties. It is said, that the owners could not insure the commissions, they were to pay to the supercargo, and therefore made them depend on the safe arrival of the proceeds here. But they insured the *profits*, and being thus secure of all the advantages of the speculation, they could well afford to pay the commissions. Considering the nature and extent of the voyage, the sum agreed to be paid to the defendant in error, was not an extraordinary compensation.

It is not pretended that if the cargo perished altogether, that the defendant in error was to be paid. The plain and fair understanding of the contract is, that if the *proceeds* of the cargo came into the hands of the owners, they were to pay the commissions. This is the only just and liberal construction, to be given to the agreement, without adhering to the strict words. Suppose the ship had been cast away at Sandy-Hook, and all the goods saved and sold in *New-Jersey*, or brought up to *New-York* in lighters, and the *proceeds* received by the owners, would not the defendant in error have been entitled to his commissions? Might he not say, I sold your cargo in *Batavia*, I procured and put on board the return cargo, and have performed all the duties that were required of me? The *proceeds* have come into your hands, and I am, therefore, entitled to my reward. The loss was a technical total loss. The property might as well be sold at *St. Kitts*, as at *New-York*; the owners ought not, therefore, to get rid

ALBANY,
Feb. 1806.

The New-York
Ins. Company
v.
William I. Robinson.

of their contract, and throw the loss of commissions on the insurers. The supplementary agreement about the sale of the return cargo cannot affect the other contract, which is wholly independent. If, then, on a fair construction of the contract, the defendant in error be justly entitled to receive his commissions from the owners, the insurers cannot be liable, and the judgment of the supreme court ought to be reversed.

The CHANCELLOR. The legal construction of the contract, on which the existence of the interest insured depended, presents the only point in contest between the parties. It is, therefore, incumbent on the court, in the first instance, to discover its intent.

Matters extrinsic cannot be mixed in the exposition of written contracts, if the intent can be satisfactorily extracted from the terms in which they are conceived; unless mistake, or imposition, have distorted the meaning of the parties, which is not pretended, in this case. It is not imposed, as a duty, on this court, to supply omissions, which the inadvertence of the contractors has suffered to pass without attention, on conjectural grounds.

The contract in question, is admitted to have been made at *New-York:* the compensation to the defendant in error, is expressly said to be made, in consideration of his undertaking and executing the duties of the *trust of supercargo.* The execution of that trust, which consisted in selling the outward-bound, and purchasing and loading the homeward-bound cargo was, in its locality, confined to *Batavia;* and those duties, it is found by the jury, were faithfully performed. Though this contract and the policy were made about the same time; the former being dated the 21st, and the latter, the 27th of *February,* 1798, and the policy, in express terms, attached to the interest of the defendants in error, derived under the contract, no legal intendment arises from those circumstances, that the plaintiffs in error were privy to the ulterior views of the parties to it. They had nothing but the written contract, which was communicated to them, on which to estimate the risks they were to incur; and the same

construction, which it was susceptible of, at the moment of its consummation, must still be attached to it ; for there is no *common* act of the original parties to the contract disclosed, which has varied its effects ; and after it was made, it depended exclusively on the defendant in error, whether he would run his own risk, or protect himself against it by opening a policy.

In no part of the contract, is the port of delivery expressly mentioned ; and it is not even designated by necessary implication, unless the election secured to the defendant in error, to receive his compensation, on *his* arrival at *New-York*, at the current market price, and which is limited to *his* arrival, personally, at *New-York*, and not to the arrival of the cargo, will establish that implication. If the word *bring*, is taken in its usual acceptation, it refers merely to *Batavia* ; there are no words connecting with it a progression to a particular port. It is the cargo brought *from Batavia, in the ship Mary*, the proceeds of which were to furnish the fund, from which the defendant in error was to be compensated ; but the port to which it was to be brought, is omitted.

That the ship was destined to return to *New-York*, and probably, with the cargo purchased at *Batavia*, I think, will not vary the construction. It is no part of the contract ; and the omission of so obvious a circumstance, and which must have so forcibly obtruded itself upon the minds of the parties, at the moment of making the contract, appears to me to aid the construction, which my reflections upon the subject have led me to consider as the correct one.

The compensation was, in all events, to be made out of the proceeds of the cargo, the *ship might bring from Batavia* ; thus repelling all personal responsibility of the owners, and attaching it exclusively to the cargo. But the defendant in error had an option, on his arrival at *New-York*, to take that compensation specifically *out of the cargo*, at the current market price ; thus limiting his election to *New-York*, as the place where it was to be exercised, which might affect the cargo, wherever it might be for a market. But this

election was, undoubtedly, intended to be beneficial to the defendant in error, and if he omitted to exercise it, the amount of the compensation remained undiminished. The same inexplicitness is observable in the memorandum subjoined to the contract, and subscribed by *William* & *S. Robinson.* The *return cargo*, from *Batavia* or *Canton*, is mentioned, and they undertake the trouble of the management and sale of it, free from commissions. This management and sale might, however, be as well devolved upon them elsewhere as at *New-York*, as the defendant in error, one of the firm, accompanied the subject of the contract.

There is no circumstance disclosed, from which it can be reasonably inferred, that either party intended to put any part of the subject of the contract at hazard, *on the footing of a wager.* Whatever might be the extent of the sacrifice made by the defendant in error, as to probable emolument, in undertaking the voyage, the pursuit incurred some personal risk, and required a considerable proportion of his time, and it is certain, that his services were intended to be actually exacted; and, I think it as certain, judging from the common course of these kind of transactions, that he expected to have an equivalent secured to him. If so, the personal responsibility of the ship-owners being relinquished, and the subject of management being designated, as the fund, from whence compensation was to be made, the terms of the contract must be very clear, to establish the position, that the mere contingency of the return cargo, being placed at one or the other port, *in safety*, defeats that designation.

Here a construction is contended for, which would subject him to the effect of two several contingencies, either of which, would defeat his right to compensation : the non-arrival of the cargo at *New-York*, and its arrival at that port in any other ship than the *Mary*. If this literal construction of the contract prevailed, though the owners received a profit, equal to the ordinary course of the trade, he would lose his compensation ; for the ship, with its cargo, might have been compelled to put into *Boston*, *Charleston*, or any other home port, which afforded a better market than *New-York* ;

nay, for aught that appears, *St. Christophers* may have af- ALBANY, Feb. 1806. forded that better market. So the cargo might have been em- barked on board of any other ship at *Batavia*, brought to Ths.New-York Ins. Company v. William I. Robinson. the *New-York* market, and sold with every possible advan- tage, at that port. In either of those cases, the defendant in error must have lost the whole benefit of the contract, and added its amount to the profits of the owners. There is no legal impediment to a contract of this kind, if the parties were disposed to make it ; but the intent ought to be much clearer expressed, than it is in this instance, to es- tablish so wide a departure from the ordinary modes of conducting business. It is possible that this may have been the intent ; but every reflection of my mind, has tend- ed to a different conclusion.

There is no necessary connection between the exposition of this contract, and the doctrine relative to insurances. The considerations respecting the policy, are wholly *ex post facto ;* they can have no influence by relation. The policy might never have existed ; its existence is not of the essence of the contract. It is a mere incident, arising out of it ; and matter subsequent, unless all parties concurred, could not vary it. The policy must attach to the contract, according to its legal construction, and that construction was indelibly stamped, at the moment of its consummation.

This is an answer to the objection, that both the plain- tiffs and the defendant, have united in giving a construc- tion to the contract, by the terms of the policy, in *attach- ing* it to a voyage at and from *New-York to Batavia*, with liberty to proceed to *Canton, and from thence, back to New-York ;* for the opening the policy was by the defendant in error, one only of the original contracting parties, with- out the intervention of the plaintiffs, whose concurrence was essential to vary its effect. But on this ground of construction, I have some doubts ; for it seems to me, that if the right of compensation had attached to the de- fendant at *Batavia*, the same reasons must have operated

Vol. I.                    4 M

ALBANY,
Feb. 1806.

TheNew-York
Ins. Company
v.
William I. Robinson.

to induce the defendant to make the insurance for its safe-arrival at the place of his domicil.

These reasons induce me to think, that the defendant has a remedy for his compensation against the ship owners ; and if so, he cannot resort to the plaintiffs in error for a total loss.

There are indications of an average, perhaps a total loss, but they are mere indications.

The sale of the ship and cargo, is said to have been made by merchants at *St. Christophers*, upon the usual commissions. It is possible, that these commissions might have absorbed the whole, or a large portion of the defendant's allowance. If the sale was so made, in conformity to *local* regulations, which precluded the defendant from selling, it was a positive loss, covered by the policy. If it originated in personal convenience to himself, he had no right to recover, on that ground, as he had undertaken the management and sale of the return cargo, by the terms of the contract, as one of the copartners of *William & I. Robinson*.

I am of opinion, that the judgment ought to be reversed.

WOODWORTH, Attorney-General, was of the same opinion.

CLINTON, Senator. The only question to be decided, is whether, on a just construction of this contract, the defendant in error, would be entitled to recover his commissions from the owners of the ship *Mary* and cargo. If the act to be done, or the services to be performed by the defendant in error, were to precede the payment of the stipulated compensation, he could not recover of the owners. I am inclined to consider the arrival of the return cargo, at *New-York*, in the nature of a precedent condition, and that the commissions were intended to be made dependent on that event. A number of merchants associate in a commercial enterprise, the scene of which, was to be at a great distance, and the management of which, required great prudence and discretion. To insure its suc-

cess, as far as human means could avail, they select one of their number, to act as supercargo or agent, and they agree, that if the adventure should terminate successful'y, to pay him an extraordinary compensation. If it failed, he was to receive nothing. But he might still secure the benefit of his contract, in case of any sinister event, by insuring the sum agreed to be paid as a reward for his services; thus the only loss he could sustain, would be the premium of insurance. The supercargo, accordingly, effects a policy of insurance on the amount of his commissions, out and home, against all the perils which could prevent the arrival of the return cargo to *New-York*. From this view of the case, the solution of the question is not difficult. If, by any accident, the return cargo did not reach *New-York*, he owners were not to pay, and the supercargo became entitled to recover of the insurers.

ALBANY,<br>Feb. 1806.<br><br>The New-Yo k<br>Ins. Company<br>v.<br>William I. Robinson.

If the right to the commissions were to accrue upon the investment of the return cargo at *Batavia*, why was there any insurance on the voyage home? It was paying a further premium where there was no risk. Again, the payment was to be made out of the proceeds of any carg the ship was to bring from *Batavia*, or the defendant m'ght select a part of the return cargo, at his option. Here were no proceeds of any return cargo from *Batavia*, nor was there any such cargo, from which a part could be taken, at his election. The defendant in error, has thus been deprived of his compensation, by one of the perils insured against, and is, therefore, entitled to recover of the plaintiffs in error. My opinion, therefore, is, that the judgment of the supreme court ought to be affirmed.

A majority of the senators concurring in this opinion, it was thereupon ORDERED and ADJUDGED, that the judgment given in the supreme court be affirmed, and that the record be remitted, &c.

Judgment affirmed.

END OF THE CASES IN ERROR.